## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

TEVA PHARMACEUTICAL INDUSTRIES
LTD.,

                    Plaintiff,

           v.

ASTRAZENECA PHARMACEUTICALS LP,
ASTRAZENECA PLC,
ASTRAZENECA UK LIMITED, and
IPR PHARMACEUTICALS, INC.,

                 Defendants.

HON. WILLIAM H. YOHN, JR.

Civil Action No. 2:08-cv-04786-WY

## DEFENDANTS' MOTION TO
## TRANSFER VENUE TO THE DISTRICT OF DELAWARE

Defendants AstraZeneca Pharmaceuticals LP, AstraZeneca PLC, AstraZeneca UK

Limited, and IPR Pharmaceuticals, Inc. hereby move to transfer this patent infringement action

to the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1404(a).

For the reasons set forth in the accompanying memorandum of law, this Court should transfer

Teva Pharmaceutical Industries Ltd.'s patent infringement action to the District of Delaware

because such a transfer will conserve judicial resources, facilitate discovery, and provide a more

convenient litigation forum.

Dated: April 2, 2009

Ford F. Farabow, Jr.
Charles E. Lipsey
Eric J. Fues
Rama G. Elluru
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, N.W.
Washington, D.C.  20001-4413
Tel: (202) 408-4000
Fax: (202) 408-4400
*Of Counsel for Defendants*

/s/ Charles L. Rombeau
  Jamie B. Bischoff
  Charles L. Rombeau
  BALLARD SPAHR ANDREWS
   & INGERSOLL, LLP.
51st Floor
1735 Market Street
Philadelphia, PA  19103-7599
Tel: (215) 665-8500
Fax: (215) 864-8999
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TEVA PHARMACEUTICAL INDUSTRIES LTD., | |
| Plaintiff, | HON. WILLIAM H. YOHN, JR. |
| v. | Civil Action No. 2:08-cv-04786-WY |
| ASTRAZENECA PHARMACEUTICALS LP, ASTRAZENECA PLC, ASTRAZENECA UK LIMITED, and IPR PHARMACEUTICALS, INC., | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TRANSFER VENUE TO THE DISTRICT OF DELAWARE

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................4

II.    BACKGROUND ....................................................................................................8

    A.    The Parties ...................................................................................................8

        1.    Plaintiff ................................................................................8

        2.    Defendants ...........................................................................8

    B.    The Delaware ANDA Action..........................................................................9

    C.    The Pennsylvania Case ...............................................................................10

III.    ARGUMENT........................................................................................................12

    A.    Transferring to Delaware Would Conserve Judicial Resources ............................14

    B.    The District of Delaware Is More Convenient for the Parties and Witnesses and Where Relevant Documents Are Located......................................16

    C.    Delaware Is More Closely Connected to Where the Claim Arose ........................18

    D.    Delaware Has a Stronger Interest in the Outcome of This Action ........................18

    E.    The Balance of Factors Favors a Transfer to Delaware.......................................19

IV.    CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Berk v. Shellan*,
 Civ. A. No. 06-CV-0005, 2006 WL 1192944 (E.D. Pa. Apr. 27, 2006) ................................. 10

*CIBC World Markets, Inc. v. Deutsche Bank Security, Inc.*,
 309 F. Supp. 2d 637 (D.N.J. 2004) ................................................................................. 13

*Continental Grain Co. v. Barge FBL-585*,
 364 U.S. 19 (1960) ........................................................................................................ 12

*Creative Waste Management, Inc. v. Capitol Environmental Services, Inc.*,
 Civ. A. No. 04-1060, 2004 WL 2384991 (E.D. Pa. Oct. 22, 2004) ........................................ 11

*Davox Corp. v. Digital Systems International, Inc.*,
 846 F. Supp. 144 (D. Mass. 1993) ................................................................................. 12

*In re TS Tech USA Corp.*,
 551 F.3d 1315 (Fed. Cir. 2008) ..................................................................................... 15

*In re: Rosuvastatin Calcium Patent Litigation*,
 Civ A. No. 08-md-1949 (D. Del.) (consolidated action) .......................................................... 7

*KAB Enterprise Co. v. Ursich Electrical Products, Inc.*,
 Civ. A. No. 06-4361, 2007 WL 1118308 (E.D. Pa. Apr. 13, 2007) ...................... 10, 13, 14, 15

*Kim v. Kim*,
 324 F. Supp. 2d 628 (E.D. Pa. 2004) ........................................................................ 12, 13

*Martin v. PNC Financial Services Group*,
 Civ. A. No. 02-CV-7191, 2003 WL 22097488, 2003 U.S. Dist. LEXIS 9734 (E.D. Pa.
 May 22, 2003) .............................................................................................................. 12

*National Foam, Inc. v. Williams Fire & Hazard Control, Inc.*,
 Civ. A. No. 97-3105, 1997 WL 700496 (E.D. Pa. Oct. 29, 1997) .................................... 11, 12

*Potrykus v CSX Transportation, Inc.*,
 Civ. A. No. 08-3729, 2009 WL 466573 (E.D. Pa. Feb. 25, 2009) ........................................... 11

*Regents of the University of California v. Eli Lilly & Co.*,
 119 F.3d 1559 (Fed. Cir. 1997) ..................................................................................... 11

*Shutte v. ARMCO Steel Corp.*,
 431 F.2d 22 (3d Cir. 1970) ............................................................................................ 10

## OTHER AUTHORITIES

28 U.S.C. § 1404 .......................................................................................................... 1, 10, 11, 17

Defendants AstraZeneca Pharmaceuticals LP ("AZPLP"), AstraZeneca PLC ("AZ PLC"), AstraZeneca UK Limited ("AZ UK") (collectively "AstraZeneca"), and IPR Pharmaceuticals, Inc. ("IPR") (collectively "Defendants") submit this memorandum in support of their motion to transfer this patent infringement action to the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1404(a).

## I.   INTRODUCTION

Plaintiff Teva Pharmaceutical Industries Ltd. ("Teva Ltd." or "Plaintiff") has dramatically expanded the scope of this case to overlap with another action in the District of Delaware involving the same subject matter—CRESTOR®, AstraZeneca's highly successful anticholesterol drug.  Teva Ltd. is an Israeli company having no substantive, independent business connections to this jurisdiction.  Its only apparent connection to Pennsylvania is the presence in this district of Teva Pharmaceuticals USA ("Teva USA"), its United States subsidiary, which is _not_ a party to this action.

Defendants seek to transfer this patent infringement action to the District of Delaware where, since late 2007, AstraZeneca has been prosecuting a large and complex patent infringement action under a consolidation order of the Judicial Panel on Multidistrict Litigation ("Delaware ANDA action").  In the Delaware ANDA action, AstraZeneca[1] alleges that eight generic drug manufacturers, including Teva USA, have infringed AstraZeneca's patent covering rosuvastatin calcium, the active pharmaceutical ingredient in CRESTOR®.  (Ex. 1 (Report and Recommendation in Delaware ANDA action) at 14-16.)  The ANDA court, which has been considering issues surrounding CRESTOR® for over fifteen months, is already educated on the

---

[1]      The Plaintiffs in the Delaware ANDA action are AZPLP, AZ UK, IPR, and Shionogi Seiyaku Kabushiki Kaisha (collectively the "ANDA Plaintiffs").

underlying CRESTOR® technology and participated in a scientific tutorial, and, more importantly, is currently dealing with numerous discovery disputes, including significant privilege issues, over documents that are also being sought by Teva Ltd. in this litigation.

Teva Ltd., *not* Teva USA, filed the instant action involving CRESTOR®.  Although apparently participating in the background,[2] Teva USA is not a named party.  At issue in the instant case is a drug formulation patent[3] purportedly owned by Teva Ltd., U.S. Patent No. RE 39,502 ("the '502 patent"; Ex. 2.)  Teva Ltd. alleges that CRESTOR®, the very product Teva USA and seven other generic drug manufacturers seek to copy and sell, infringes Teva Ltd.'s formulation patent.

Since the beginning of this case, in papers filed with the Court and during the January 29, 2009, preliminary pretrial conference, Defendants have informed the Court that they believe this action to be baseless, retaliatory, and designed to gain leverage in the Delaware ANDA action.  However, at the pretrial conference Teva Ltd. professed ignorance of the Delaware ANDA action and assured this Court that the cases were in no way connected.[4]  Teva Ltd. went so far as to represent that the issues in this case were so discrete and narrow that discovery could be completed within ninety (90) days, by April 29, 2009.  (Ex. 3 (Joint Rule 26(f) Report) at 7.)

To expedite this case and conserve private and public resources, Defendants urged trifurcation of discovery since this case is amenable to full disposition on a threshold issue—

---

[2]   In-house Teva USA attorneys are included on the protective order in the instant case as approved recipients of Defendants' confidential information.  (D.I. 26 at 7.)

[3]   A drug formulation comprises essentially the mixture (or recipe) of active and inactive ingredients in a particular drug product.

[4]   Teva Ltd's representation is undercut by its demand, *in its first set of discovery requests*, for all litigation documents from the Delaware ANDA action.  (*See* Ex. 12 (Request No. 29).)

whether AstraZeneca or Teva Ltd. invented the CRESTOR® formulation first.[5]  (*Id.* at 4-5.)  The Court bifurcated damages discovery and directed the parties to cooperate and produce priority of invention evidence first.  (D.I. 29 at ¶ 8.)  Defendants complied and served separate, highly focused discovery requests designed to expedite discovery on the priority issue.  (Ex. 5 (AZPLP and IPR's First Set of Requests for the Production of Documents and Things to Teva Ltd.).)  These requests seek basic information that Teva Ltd. should have known when it filed its complaint, such as when Teva Ltd. began the experimentation supporting its '502 patent.

Instead of cooperating and despite having advised this Court that *all discovery* in this case could be completed by April 29, Teva Ltd. sought to delay responding to this priority discovery by asking for an eight-week extension until mid-May.  At the same time, Teva Ltd. served overly broad, highly burdensome, and largely irrelevant discovery—seeking, most notably, discovery of evidence even beyond that produced in the multiparty Delaware ANDA action, discovery relating directly to damages issues (even though such issues have been bifurcated from the instant case), and discovery of the entire record of the Delaware ANDA action.  Moreover, despite prompting from the Defendants, none of the discovery Teva Ltd. has served to date is directed to jurisdictional issues, notwithstanding its assurances to this Court at the preliminary pretrial conference that the parties could resolve the pending motions to dismiss filed by AZ PLC and AZ UK.  Finally, Teva Ltd. has reversed course at the eleventh hour and

---

[5]     Teva Ltd. alleges that the commercial formulation of CRESTOR® infringes its patent claiming supposedly novel formulations.  (D.I. 1 at ¶ 18.)  But AstraZeneca's commercial drug formulation for CRESTOR® is covered by its own patent, U.S. Patent No. 6,316,460 ("the '460 patent"; Ex. 4).  When two patents seek to claim the same subject matter, only one can be valid. If AstraZeneca invented its own formulation first within the meaning of the Patent Act, its invention as claimed in the '460 patent has priority over Teva Ltd.'s alleged invention.  In other words, if AstraZeneca invented the CRESTOR® formulation first, Teva Ltd.'s patent as it pertains to CRESTOR® cannot be valid.

served a jury demand after repeatedly insisting that this was not a jury case.[6]  (Ex. 6 (Teva Ltd.'s Conference Information Report); D.I. 31.)

Defendants seek no relief at this time as to the propriety of Teva Ltd.'s discovery requests, its treatment of jurisdictional matters, or its waiver of a jury demand.  Defendants will address these issues at a later time.  But the point to be made is perhaps self-apparent—had Teva Ltd. revealed its true intentions at or before the January preliminary conference, Defendants would have moved to transfer to Delaware at an earlier time.  Nevertheless, at this relatively early stage in the case, a transfer to the District of Delaware remains fully warranted.[7]

Indeed, the interest of justice—including conserving judicial resources—alone is sufficient to justify transfer to Delaware.  The Delaware ANDA court is already familiar with the substantive and technical issues surrounding CRESTOR® and is in the best position to make consistent rulings in the two cases.  This is even more important here given that Teva Ltd. has expanded the contours of this case by requesting largely irrelevant and overlapping discovery vis-à-vis the Delaware ANDA action.  Determining the scope of relevant discovery by the same court will conserve judicial resources and further the interest of justice.  Also, the allegedly infringing product formulation was discovered and developed by AZPLP in Delaware.  AZPLP also markets and sells the accused CRESTOR® products out of its Delaware corporate headquarters.  Accordingly, many, if not all, essential witnesses and documents are located in Delaware and it will be more convenient for the parties to litigate there.  Additionally, Teva USA, AstraZeneca's direct competitor in the United States, and who is an unnamed but

---

[6]     Defendants will move shortly to strike this jury demand due to Plaintiff's earlier waiver.

[7]     Defendants do not seek consolidation of this case with the pending Delaware Action but do request a transfer to that federal district court, where the case will be marked as "related."

interested party here, is a Delaware corporation.  And since Teva Ltd. is an Israeli company, it

has no independent basis to claim the Eastern District of Pennsylvania as a more convenient

forum.

Defendants submit that transfer of this litigation to the District of Delaware for the

reasons set forth below will conserve judicial and private resources, ensure consistent discovery

rulings between the lawsuits, and discourage further gamesmanship by the Plaintiff.

## II.      BACKGROUND

### A.      The Parties

#### 1.      Plaintiff

Teva Ltd. is a corporation organized under the laws of Israel with its principal place of

business in Israel.  (D.I. 1 at ¶ 4.)  Defendants are unaware of any activity that Teva Ltd. has

conducted in Pennsylvania relevant to this case.  The only witnesses identified by Teva Ltd. in its

initial disclosures, including the two inventors of the '502 patent-in-suit, reside in Israel.  (Ex. 7

(Teva Ltd.'s Initial Disclosures) at 2; Ex. 2.)  Teva Ltd. has also stated that all of the documents

and information related to the development of the '502 patent inventions are located in Israel.

Furthermore, Teva Ltd. does not reside or maintain offices in Pennsylvania.  (D.I. 1 at ¶ 4.)

Although Teva's U.S. subsidiary, Teva USA, is a corporation operating and existing under the

laws of Delaware with its principal place of business in Pennsylvania, it is not a party to this

action.  (Ex. 8 (Teva USA's Answer in the ANDA action) at 3.)  Nor has Plaintiff contended that

Teva USA has an ownership interest in the asserted '502 patent.

#### 2.      Defendants

Teva Ltd. named AZPLP, AZ PLC, AZ UK, and IPR as Defendants in this action.

AZPLP, a Delaware company, and IPR, a Puerto Rican company, are the entities involved in the

manufacturing and selling of CRESTOR® products in the United States.  (D.I. 1 at ¶¶ 5, 8;

D.I. 17 at 1.)  AZ PLC and AZ UK are foreign companies organized under the laws of the United

Kingdom with principal places of business in England.  (D.I. 1 at ¶¶ 6-7.)[8]  AZPLP is the only

party in this action located within the continental United States.

    **B.**      **The Delaware ANDA Action**

In the Delaware ANDA action, the ANDA Plaintiffs have alleged that Teva USA and

seven other generic manufacturers, in filing for FDA approval to manufacture and market

generic versions of CRESTOR®, infringe U.S. Patent No. RE 37,314 ("the '314 patent"; Ex. 9),

which expires in 2016.  (Ex. 1 at 4, 14).)  The subject matter of the '314 patent is the chemical

compound rosuvastatin calcium, the active pharmaceutical ingredient in CRESTOR®.

CRESTOR® is a market leading "statin," a drug that inhibits the formation of cholesterol

in the body.  CRESTOR® is one of the most effective lipid-lowering statins available.  What sets

CRESTOR® apart from other statins is that it raises HDL-C ("good" cholesterol) as well as

reducing LDL-C ("bad" cholesterol).  Over 11 million patients have been prescribed

CRESTOR®, and over 110 million prescriptions have been written worldwide for CRESTOR®.

In 2008 alone, CRESTOR® generated over $ 1.6 billion in net sales in the United States.  Not

surprisingly, CRESTOR® is one of AstraZeneca's best-selling drug products. .

The Delaware ANDA action was filed on December 11, 2007, and Teva USA was joined

as a defendant in July 2008.  (Ex. 1 at 14-16.)  Thus, the ANDA court has been engaged for more

than fifteen months with the issues related to CRESTOR® products.  It has participated in a

scientific tutorial presented by the parties, held a claim construction hearing, resolved at least one

---

[8]      AZPLP is an indirect subsidiary of AZ UK and AZ PLC.  (D.I. 17 at 1.)  AZ PLC is the
ultimate parent of both AZPLP and AZ UK.  (*Id.*)  AZ PLC and AZ UK filed motions to dismiss
for lack of personal jurisdiction, which the Court administratively dismissed without prejudice to
their rights to reinstate the motions beginning on April 6, 2009.  (D.I. 30.)

discovery dispute, and is scheduled to hear additional discovery disputes between the parties,

including disputes relating to privilege and purported waivers of privilege.  (10 (Docket sheet

from *In re: Rosuvastatin Calcium Patent Litigation*, 08-md-1949 (D. Del.) (consolidated

action).)  Fact discovery in the Delaware ANDA action is scheduled to close on April 17, 2009.

(Ex. 11 (Stipulated Amendment to Scheduling Order in ANDA action) at 4.)

### C.     The Pennsylvania Case

On October 6, 2008, Teva Ltd. filed the instant action in this District alleging that

Defendants' manufacture, use, sale, and/or offer for sale in the United States, or importation into

the United States, of CRESTOR® products infringes Teva Ltd.'s '502 patent.  (D.I. 1 at ¶ 18.)

Specifically, Teva Ltd. alleges that the Defendants' use of the formulation in the CRESTOR®

product infringes the '502 patent.

Teva Ltd.'s representations to this Court at the January 29, 2009, pretrial conference as to

the scope of this case and its subsequent actions are completely contradictory.  Both before and

at the conference, Teva Ltd. disavowed any linkage to the Delaware ANDA action and

represented that the issues in this case were sufficiently narrow that discovery could be

completed within ninety (90) days, by April 29, 2009.  (D.I. 14 at 7.)  Yet the discovery requests

Teva Ltd. served after that conference were strikingly broad and covered contested areas in the

ANDA discovery (e.g., marketing and sales materials).  (Ex. 12 (Teva Ltd.'s First Set of

Requests for the Production of Documents and Things to Defendants); Ex. 13 (ANDA

Defendants' Requests for the Production of Documents and Things in ANDA action).)  In

addition, although this Court specifically ordered "[n]o discovery relating to damages" (D.I. 29

at ¶ 8), Teva Ltd. clearly seeks discovery on damages (i.e., information relating to the market

value of CRESTOR®, such as its marketing, distribution, and sales) (Ex. 12).

The chart below outlines some of the overlapping discovery sought by Teva Ltd. in this

case:

| Teva Ltd.'s Discovery Requests in This Action | ANDA Defendants' Discovery Requests in the ANDA action |
|---|---|
| All documents concerning Rosuvastatin Products or CRESTOR®. (Ex. 12, Request No. 2.) | All documents concerning pharmaceutical formulations containing rosuvastatin. (Ex. 13, Request No. 148.) |
| All documents concerning Rosuvastatin Products or CRESTOR® submitted to any regulatory agency. (Ex. 12, Request No. 5.) | The IND [and NDA] for rosuvastatin, all supplemental submissions and amendments, and any correspondence with the FDA concerning any of the foregoing. (Ex. 13, Request Nos. 85, 86.) |
| All documents relating to communications between Defendants or their agents and the FDA regarding any DMF, IND application and NDA for CRESTOR®. (Ex. 12, Request No. 7.) | All documents and things concerning any communication between Plaintiffs and the FDA concerning any Rosuvastatin Calcium Product. (Ex. 13, Request No. 129.) |
| All documents relating to any actual or potential distribution of Rosuvastatin Products or CRESTOR® . . . . (Ex. 12, Request Nos. 17, 22.) | Documents sufficient to show Plaintiffs' distribution chain for rosuvastatin in the United States . . . . (Ex. 13, Request No. 138.) |
| All documents relating to any marketing and promotion of Rosuvastatin Products or CRESTOR® . . . . (Ex. 12, Request No. 21.) | All documents concerning Plaintiffs' marketing of rosuvastatin in the United States . . . . (Ex. 13, Request No. 133.) All documents and things concerning the advertising or promotion of any Rosuvastatin Calcium Product. (Ex. 13, Request No. 104.) |
| All documents relating to the purchase, agreements to purchase, or other acquisition of Rosuvastatin Products or CRESTOR® or any other ingredients for use in Rosuvastatin Products or CRESTOR®. (Ex. 12, Request No. 23.) | All documents concerning any pricing or supply information or agreements for rosuvastatin, including agreements with wholesalers, retailers, suppliers, buying, consortiums, and similar entities. (Ex. 13, Request No. 140.) |

In addition, Teva Ltd. seeks _all_ litigation documents from the Delaware ANDA action.  (*See* Ex.

12 (Request No. 29 for "*[a]ll documents concerning any United States or foreign litigation*,

interference, reexamination, reissue, cancellation proceeding, nullity proceeding, opposition

proceeding, or other ex parte or inter parties proceeding involving any product or process related

to the DMF, IND application, or NDA for CRESTOR®." (emphasis added)).)  Teva Ltd. also

seeks highly sensitive, potentially privileged information that AstraZeneca has refused to

produce in the ANDA action.  (*Id.* (Request No. 32 for "[a]ll documents concerning any

agreement concerning Rosuvastatin Products or CRESTOR®, or the Patent-In-Suit, in this or *any*

*related litigation to which Defendants are a party*, including without limitation any joint defense agreement, non-disclosure agreements, or agreements to share information." (emphasis added)).)

Furthermore, this Court specifically urged the parties to expedite and resolve the priority of invention issues by focusing first on priority of invention discovery and resolving these issues at the outset (e.g., via motion for summary judgment).[9]  Defendants complied and served a discrete first set of discovery requests directed solely to priority issues.  (Ex. 5.)  Yet, with seven days left until responses to these requests were due, Teva Ltd. requested an *eight-week* extension until mid-May to provide basic information fully within its control—when its claimed inventions were first conceived and reduced to practice.  (Ex. 14 (03/16/09 Letter from E. Fues to J. Waldrop); Ex. 15 (03/16/09 Letter from J. Waldrop to E. Fues).)  By contrast, Teva Ltd.'s own discovery requests were extraordinarily broad and failed to even attempt to resolve the priority of invention issue.  (Ex. 12.)  There is also not one shred of jurisdictional discovery contained in the discovery requests served to date by Teva Ltd., despite Teva Ltd.'s express assurances to the Court that the parties could easily resolve the outstanding jurisdictional issues of United Kingdom-based AZ PLC and AZ UK's motions to dismiss.

In short, this action, which has no connections to this District, belongs in the District of Delaware.

## III.    ARGUMENT

Section 1404(a), which governs this transfer motion, provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to

---

[9]      Defendants reiterated their position at the January 29, 2009, conference that AstraZeneca developed its CRESTOR® product formulations before Teva conducted the experimentation relied upon for its patent filing.  (*See* D.I. 14 at 4-5.)  Indeed, AstraZeneca believes it very likely developed its CRESTOR® product formulations, which it separately patented, before Teva even conceived of the alleged inventions of the '502 patent.  (*Id.*)

any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The party

moving for a transfer under § 1404(a) must show that "(1) the case could have been brought

initially in the proposed transferee forum, (2) that forum is more convenient for the parties and

witnesses and (3) that the proposed transfer will be in the *interest of justice*."  *Berk v. Shellan*,

Civ. A. No. 06-CV-0005, 2006 WL 1192944, at *1 (E.D. Pa. Apr. 27, 2006) (emphasis added).

Because there is no dispute that the District of Delaware is a district where this action could have

been brought, the decision to transfer is in the court's discretion.  *Shutte v. ARMCO Steel Corp.*,

431 F.2d 22, 25 (3d Cir. 1970).

      In analyzing a motion to transfer pursuant to § 1404(a), courts consider a host of private

and public interest factors to determine whether the interest of justice would be better served, and

if the litigation would more conveniently proceed, by transfer to a different forum.  *KAB Enter.*

*Co. v. Ursich Elec. Prods., Inc.*, Civ. A. No. 06-4361, 2007 WL 1118308, at *1 (E.D. Pa. Apr.

13, 2007).  The private interest factors for consideration include (1) plaintiff's choice of forum;

(2) defendant's choice of forum; (3) where the claim arose; (4) convenience of the parties as

indicated by their relative physical and financial conditions; (5) convenience of the witnesses—

but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;

and (6) location of books and records.  *Id.*  The public interest factors to be considered include

(7) enforceability of the judgment; (8) practical considerations that could make the trial easy,

expeditious, or inexpensive; (9) level of  congestion in the two fora; (10) local interest in

deciding local controversies; (11) public policies of the fora; and (12) in a diversity case,

familiarity of the two courts with state law.  *Id.*  On balance, these factors plainly support this

Court's relinquishment of jurisdiction and satisfy Defendants' burden to justify transfer.  *See,*

*e.g.*, *Potrykus v CSX Transp., Inc.*, Civ. A. No. 08-3729, 2009 WL 466573, at *1 (E.D. Pa. Feb. 25, 2009) (burden on movant).

A. **Transferring to Delaware Would Conserve Judicial Resources**

Transferring this case to Delaware where the ANDA action involving overlapping issues is pending will conserve judicial resources. "The public interest in conservation of scarce judicial resources militates strongly in favor of transfer here." *Creative Waste Mgmt., Inc. v. Capitol Envtl. Servs., Inc.*, Civ. A. No. 04-1060, 2004 WL 2384991, at *10 (E.D. Pa. Oct. 22, 2004) (court transferred case because otherwise, two actions arising out of the same set of operative facts would proceed in two different judicial districts leading to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent). Indeed, the Federal Circuit has explained that the interest of justice, which includes judicial economy, is such an essential element to the transfer analysis that it may be a determinative factor in patent cases, "even if the convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (citation omitted). In this case, significant judicial resources will be conserved by having the Delaware ANDA court resolve the overlapping issues in this case. Moreover, "[b]ecause of the relatively short period of time the instant action has been on this court's docket and the lack of any formal development of the record, a transfer will not significantly disrupt the litigation or result in a waste of judicial resources." *Potrykus*, 2009 WL 466573, at *3.

Because the instant case and the ANDA action "concern[] similar technologies, will involve common discovery and witnesses, the cases should be heard in a single forum, to conserve judicial resources and to promote an efficient resolution of all the related matters pending between the parties." *Nat'l Foam, Inc. v. Williams Fire & Hazard Control, Inc.*, Civ. A. No. 97-3105, 1997 WL 700496, at *10 (E.D. Pa. Oct. 29, 1997) (quoting *Davox Corp. v. Digital*

*Sys. Int'l, Inc.*, 846 F. Supp. 144, 149 (D. Mass. 1993)).  The *National Foam* court granted a

transfer so that all of the related patent claims could be decided in one district because the factual

issues necessary to resolve the parties' claims would substantially overlap.  *Id*.; *see also Kim v.*

*Kim*, 324 F. Supp. 2d 628 (E.D. Pa. 2004) (finding it practical to transfer to district where related

action was pending to permit resolution of dispute in a single forum); *Cont'l Grain Co. v. Barge*

*FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely

the same issues are simultaneously pending in different District Courts leads to the wastefulness

of time, energy and money that § 1404(a) was designed to prevent."); *Martin v. PNC Fin. Servs.*

*Group*, Civ. A. No. 02-CV-7191, 2003 WL 22097488, at *1 (E.D. Pa. May 22, 2003) ("[T]he

presence of related cases in the transferee forum is a reason to grant a transfer.").

Teva Ltd. has interjected several overlapping issues in this case.  First, the Delaware

ANDA action is fundamentally about the complex science behind the invention and development

of CRESTOR®.  Teva Ltd.'s suit involves related scientific issues, specifically, the formulation

of CRESTOR®.  The Delaware court has spent more than fifteen months with the issues related

to CRESTOR® products and has been educated about the underlying technology by the parties.

(Exs. 10, 11.)  The Delaware court's technical experience is even more important now that Teva

Ltd. has attempted to significantly expand and complicate the scope of the instant case (e.g., by

belatedly demanding a jury trial).

Second, the Delaware court has already determined the bounds of discovery, which is set

to close next month absent extensions.  (Ex. 11.)  As set forth above, Teva Ltd. has made

repetitive and overreaching requests that are irrelevant to *this* case and strikingly similar to

discovery requested in the Delaware ANDA action.  To promote the interest of justice by

preventing inconsistent discovery results, particularly here, given that two Teva USA in-house

counsel can see AstraZeneca confidential information, the scope of overlapping discovery should be decided by the Delaware court.  *See Kim*, 324 F. Supp. 2d at 643 n.52 (quoting *CIBC World Mkts., Inc. v. Deutsche Bank Sec., Inc.*, 309 F. Supp. 2d 637, 651 (D.N.J. 2004) ("Where, as here, related lawsuits are pending elsewhere, transferring a case serves not only private interests but also the interests of justice because it eliminates the possibility of inconsistent results . . . and conserves judicial resources." (alteration in original))).

Third, much of the discovery sought by Teva Ltd. in this case and the ANDA defendants in Delaware involves complex AstraZeneca privilege issues, encompassing both AstraZeneca's attorney-client privilege as well as AstraZeneca's common-interest privilege issues with Shionogi in the Delaware ANDA action.  Indeed, the parties in the Delaware ANDA actions spent many months unsuccessfully attempting to resolve without court intervention disputes over privileged information, privilege logs, and scope of discovery issues.  The ANDA court has scheduled discovery conferences on Friday, April 3, and Wednesday, April 8, to address these disputes as well as additional discovery matters.  But in the instant case, Teva Ltd. has attempted a back-door approach to obtain the AstraZeneca privileged information that the ANDA defendants have not been able to otherwise obtain in Delaware.  (Ex. 12 (Request No. 32).)  To prevent inconsistent results in the scope of AstraZeneca's privilege, these issues should be resolved by the same court.

**B.    The District of Delaware Is More Convenient for the Parties and Witnesses and Where Relevant Documents Are Located**

The convenience of the parties and witnesses and the location of documents also weighs in favor of transfer.  *See KAB Enter.*, 2007 WL 1118308, at *2-3.

AZPLP, the AstraZeneca entity that developed the CRESTOR® product formulation and the one most familiar with the formulation of the CRESTOR® products manufactured and sold in

the United States, is located in Delaware.  (D.I. 1 at ¶ 5; Ex. 16 (Defendants' Initial Disclosures)

at 4-7.)  Therefore, all of the relevant evidence and the witnesses most knowledgeable about the

substantive issues in this case—the research and development of the formulation used in

CRESTOR® products and AstraZeneca's noninfringement of the '502 patent—are located in

Delaware.  Indeed, the documents relating to Defendants' prior-invention defense, the discovery

and development of the CRESTOR® formulation, and the section of the New Drug Application

disclosing the formulation for the CRESTOR® products manufactured and sold in the United

States, are all located in Delaware.  (*Id*. at 6-7.)  In contrast, Defendants are not aware of any

relevant documents located in Pennsylvania.  Additionally, one of the two named inventors of

AZPLP's own formulation patent, the '460 patent, the subject matter of which was likely

developed before Teva Ltd.'s '502 patent inventions were conceived, is still an AZPLP

employee who resides in Delaware.  (Ex. 16 at 4; Ex. 4.)  The only other inventor of the '460

patent is a third party, a former AZPLP employee who also resides in Delaware.  (Ex. 16 at 4.)

Former and current AstraZeneca employees and scientists who worked with the two inventors

and who are knowledgeable about the CRESTOR® product formulation also reside in or close to

Delaware.  Thus, for those key witnesses, the travel time to this District would be longer than the

travel time within the District of Delaware.

Also, Teva Ltd.'s choice of forum, this District, is given less weight because

Pennsylvania is not its state of residence and has no special status as the situs of the occurrence

upon which the suit is based.  *KAB Enter.*, 2007 WL 1118308, at *2 (while a plaintiff's choice of

forum should not be disturbed lightly, if a plaintiff chooses a forum other than his state of

residence or the situs of the occurrence upon which the suit is based, his choice is given less

weight).  Teva Ltd. is an Israeli corporation with its principal place of business in Israel.  (D.I. 1

at ¶ 4.)  The development of the inventions covered by the '502 patent occurred in Israel.  (Ex. 2.)  The two named inventors, ostensibly the Teva Ltd. witnesses most familiar with the '502 patent inventions, are located in Israel.  (Ex. 2; Ex. 7 at 2.)  And, most telling, Teva Ltd. has stated, in requesting an extension to respond to Defendants' discovery requests, that its relevant documents and information are located in Israel.  (Exs. 14, 15.)  Teva Ltd. has no contacts to Pennsylvania relevant to this action.

### C.     Delaware Is More Closely Connected to Where the Claim Arose

Where the claim arose also weighs in favor of transfer.  *KAB Enter.*, 2007 WL 1118308, at *2.  Defendants have a far stronger connection to the District of Delaware than Teva Ltd. has to the Eastern District of Pennsylvania.

Teva Ltd.'s allegation of infringement—the manufacture, use, sale, and/or offer for sale in the United States, or importation into the United States of CRESTOR® products—has a stronger connection to Delaware than Pennsylvania.  While CRESTOR® products are sold across the United States, AZPLP, located in Delaware, directs the marketing and sales of the products.  *See id.* (finding this factor weighs in favor of transfer because, although declaratory judgment plaintiffs sell products throughout the United States, they seek noninfringement judgment on patents owned by Defendants that have principal places of business in the transferee district).

### D.     Delaware Has a Stronger Interest in the Outcome of This Action

The District of Delaware also has a compelling local interest in this patent infringement action.  While the accused CRESTOR® products have been sold in this District—as they have been throughout the United States, including in Delaware—that fact carries no weight because it would imply that every district in the United States has a local interest in this case.  *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (finding no local interest in transferor district just because plaintiffs sold allegedly infringing national products throughout the United

States in that district).  In any event, there is little question that the District of Delaware has a

significant interest in the outcome of this case because it is home to AZPLP.  AZPLP, the only

Defendant with its principal place of business in the United States, will most likely be the only

AstraZeneca entity that will remain as a Defendant in this action after the two pending motions

to dismiss are resolved.  AZPLP markets and sells the accused CRESTOR® products and

employs a significant workforce in Delaware.

        **E.**        **The Balance of Factors Favors a Transfer to Delaware**

On balance, the factors overwhelmingly support transfer to Delaware.  Plaintiff has now

clearly manifested its intent (in a manner not originally revealed) to litigate this case as a matter

related to the Delaware ANDA action.  Hence, putting the same court in charge of defining the

boundaries of discovery ensures consistent decisions and takes advantage of that court's

technical knowledge gained through handling the other CRESTOR® litigation.  Also, Delaware

is the location of AZPLP, of several key witnesses, and of most of Defendants' relevant

documents, and is also the home of a key nonparty inventor witness.

## IV.    CONCLUSION

For the reasons set forth above, this Court should transfer Teva Ltd.'s patent infringement action to the District of Delaware pursuant to 28 U.S.C. § 1404(a) because this transfer will conserve judicial resources, facilitate discovery, and provide a more convenient litigation forum.

Dated:  April 2, 2009

Ford F. Farabow, Jr.
Charles E. Lipsey
Eric J. Fues
Rama G. Elluru
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, N.W.
Washington, DC  20001-4413
Tel: (202) 408-4000
Fax: (202) 408-4400
*Of Counsel for Defendants*

/s/ Charles L. Rombeau
  Jamie B. Bischoff
  Charles L. Rombeau
  BALLARD SPAHR ANDREWS
    & INGERSOLL, LLP.
  51st Floor
  1735 Market Street
  Philadelphia, PA  19103-7599
  Tel: (215) 665-8500
  Fax: (215) 864-8999
  *Attorneys for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned attorney certifies that, on this date, he caused to be served copies of the foregoing Motion to Transfer Venue, Memorandum of Law, and accompanying exhibits in support thereof via the Court's electronic filing system upon the following:

> Neil C. Schur
> Stevens & Lee, P.C.
> 1818 Market Street, 29th Floor
> Philadelphia, PA 19103
>
> Darcy L. Jones
> Jeffrey J. Toney
> Leslie K. Savich
> Sutherland Asbill & Brennan LLP
> 999 Peachtree Street, NE
> Atlanta, GA 30309
> **Counsel for Plaintiff**

Dated:  April 2, 2009                                              /s/ Charles L. Rombeau
                                                                            Charles L. Rombeau