# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TEVA PHARMACEUTICAL INDUSTRIES LTD., : <br>     Plaintiff, : <br> : <br>     v. : <br> : <br> ASTRAZENECA PHARMACEUTICALS LP and IPR : <br> PHARMACEUTICALS, INC., : <br>     Defendants. : <br> : | CIVIL ACTION <br><br> NO. 08-4786 |

## Memorandum

YOHN, J.                                                                                                                              August 24, 2009

      Plaintiff Teva Pharmaceutical Industries Ltd. ("Teva") brings this patent infringement action against defendants AstraZeneca Pharmaceuticals, LP ("AZLP") and IPR Pharmaceuticals, Inc. ("IPR").[1] Presently before the court is defendants' motion to transfer venue, pursuant to 28 U.S.C. § 1404(a), to the District of Delaware. For the reasons discussed below, the court will deny the motion.

**I.    Facts and Procedural History**

      Teva is an Israeli corporation with its principal place of business in Israel. (Compl. ¶ 4.) Teva has an American subsidiary, Teva Pharmaceuticals USA, Inc. ("Teva USA"), which is a Delaware corporation with its principal place of business in this judicial district. (Defs.' Mem. Law Supp. Mot. Transfer Venue ("Defs.' Venue Mem.") at 8.) Teva USA is *not* a party to this

---

[1] Originally, plaintiff brought this action against two additional defendants: AstraZeneca PLC and AstraZeneca UK Limited. Pursuant to a June 4, 2009 Joint Stipulation of Dismissal, however, those entities are no longer defendants in this case.

lawsuit. Teva owns United States Patent No. RE 39,502 (the "'502 Patent"), entitled "Stable Pharmaceutical Compositions containing 7-Substituted-3,5-Dihydroxyheptanoic Acids or 7-Substituted-3,5-Dihydroxyheptenoic Acids," which was reissued by the United States Patent and Trademark Office on March 6, 2007. U.S. Patent No. RE 39,502 (filed Mar. 17, 2005). The '502 Patent contains 55 claims and covers certain compositions of statins[2] that are stabilized to prevent degradation over time.[3] (Compl. ¶¶ 11-12, Ex. A.) Plaintiff claims the invention disclosed in the '502 Patent comprises pharmaceutical formulations of statins combined with "a stabilizing effective amount of at least one amido-group containing polymeric compound or at least one amino-group containing polymeric compound, or combination thereof." '502 Patent col.16 ll.28-31. The claimed formulations do not contain a stabilizing amount of other stabilizers, *id.* col.16 ll.31-34, but may contain "at least one pharmaceutically acceptable excipient[4] selected from the group consisting of a lubricant, a glidant, a binder, a filler, a disintegrant, a diluent, a carrier, a colorant, a coating material, and a preservative," *id.* col.18 ll.60-64. Thus, while not claiming any particular active drug compound, the '502 Patent claims certain stabilized formulations of statins.

Defendant AZLP is a Delaware Corporation with its principal place of business in

---

[2] Statins are a class of drugs commonly used to treat lipid disorders such as high cholesterol. (Compl. ¶¶ 12, 14; Defs.' Venue Mem. at 9.)

[3] The court's brief summaries of the patents involved in defendants' motion are intended solely for purposes of deciding the present motion. Recognizing the early stage of this litigation, the court makes no binding or final findings as to the scope of any patent, claim construction, or the parties' rights beyond those directly at issue in defendants' present motion.

[4] Webster's Dictionary defines an "excipient" as "an inert substance . . . that forms a vehicle (as for a drug or antigen)." *Webster's Third New International Dictionary*, 792 (1981).

Delaware.  (Comp. ¶ 5; Defs.' Venue Mem. at 8.)  AZLP maintains a "business center" in this judicial district.  (*Id.* ¶ 10; Answers of AZLP and IPR ¶ 10; *see also* Pl.'s Opp'n Defs.' Mot. Transfer Venue ("Pl.'s Venue Resp.") at 4.)  Defendant IPR is a Puerto Rican corporation with its principal place of business in Puerto Rico.  (Compl. ¶ 8; Defs.' Venue Mem. at 8.)  AZLP and IPR are sister corporations, sharing a common parent, AstraZeneca PLC, a British corporation.  (*Id.* ¶ 9.)  IPR manufactures—and holds the approved New Drug Application[5] ("NDA") No. 21-366 for—Crestor in 5, 10, 20, and 40 mg dosages.  (Compl. ¶¶ 13-15.)  Crestor (the active ingredient of which has the generic name rosuvastatin calcium) is a statin, (*id.* ¶ 14; Defs.'s Venue Mem. at 9), and AZLP markets, distributes, and sells Crestor in the United States, (Compl. ¶ 15; Answers of AZLP and IPR ¶ 15; Defs.' Venue Mem. at 8).  Plaintiff alleges that Crestor, as currently formulated and sold, infringes the '502 Patent.  (Compl. ¶¶ 15-16.)  Accordingly, plaintiff brings the present infringement suit.

On December 11, 2007, AZLP, IPR, AstraZeneca UK Ltd., and Shionogi Seiyaku Kabushiki Kaisha[6] (collectively, "ANDA plaintiffs") filed suit (the "ANDA action") against several generic drug manufacturers ("ANDA defendants"), alleging that the ANDA defendants infringed upon U.S. Patent No. RE 37,314 (the "'314 Patent").  (Defs.' Venue Mem. at 9.)  The ANDA plaintiffs added Teva USA as a defendant to the ANDA action in July 2008.  (*Id.*)  The

---

[5] As the Food and Drug Administration explains, "the regulation and control of new drugs in the United States [is] based on the New Drug Application (NDA). . . . The NDA application is the vehicle through which drug sponsors formally propose that the FDA approve a new pharmaceutical for sale and marketing in the U.S."  New Drug Application (NDA), http://www.fda.gov/Drugs/DevelopmentApprovalProcess/HowDrugsareDevelopedandApproved/ ApprovalApplications/NewDrugApplicationNDA/default.htm (last updated July 16, 2009).

[6] A Japanese corporation with its principal place of business in Japan.

ANDA action is a multi-district litigation consolidated in the District of Delaware now involving at least eight defendants, captioned *In re: Rosuvastatin Calcium Patent Litigation*, 08-1949 (D. Del.). (*See* Defs.' Venue Mem. Ex. 10.)[7] The '314 Patent, entitled "Pyrimidine Derivatives," covers rosuvastatin calcium, the active ingredient in Crestor. (*Id.* at 9; *see also id.* Ex. 9.) In the ANDA action, ANDA plaintiffs allege that ANDA defendants infringed the '314 Patent when they filed Abbreviated New Drug Applications[8] ("ANDAs") to market generic rosuvastatin calcium. (*Id.* at 9.) When filing their ANDAs, ANDA defendants certified that at least one of ANDA plaintiffs' patents was invalid or would not be infringed by the generic rosuvastatin calcium that ANDA defendants seek to market. (*See* Defs.' Venue Mem. Ex. 1.) Congress has defined such an application, if erroneous, as an act of infringement, enabling patent holders to file suit against would-be generic manufacturers; however, only limited remedies are available to patent holders in such suits. 35 U.S.C. § 271(e). This type of infringement, consisting "of submitting an ANDA containing a certification . . . that a listed patent is invalid or that the manufacture, sale, or use of the proposed product would not infringe that patent" has come to be known as an "artificial act of infringement." *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1358 (Fed. Cir. 2003); *see Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 675-78 (1990)

---

[7] Defendants have not attempted to have—or suggested they will seek to have—the MDL Panel transfer this action to the MDL judge in Delaware.

[8] "An Abbreviated New Drug Application (ANDA) contains data which when submitted to FDA's Center for Drug Evaluation and Research, Office of Generic Drugs, provides for the review and ultimate approval of a generic drug product. Once approved, an applicant may manufacture and market the generic drug product to provide a safe, effective, low cost alternative to the American public." Abbreviated New Drug Application (ANDA): Generics, http://www.fda.gov/Drugs/DevelopmentApprovalProcess/HowDrugsareDevelopedandApproved/ApprovalApplications/AbbreviatedNewDrugApplicationANDAGenerics/default.htm (last updated July 10, 2009).

(explaining the relevant statutory regime and discussing "the creation of a highly artificial act of infringement that consists of submitting an ANDA . . . that is in error as to whether commercial manufacture, use, or sale of the new drug (none of which, of course, has actually occurred) violates the relevant patent").[9]

## II.   Discussion

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The decision to grant a motion for a transfer of venue lies within the discretion of the district court, but "the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *see also Shutte v. ARMCO Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (reminding that "plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request"). The defendant bears the burden of proving that venue is proper in the transferee district and that convenience and justice would be served by transferring the action to another district. *Jumara*, 55 F.3d at 879. "There is nothing . . . in the language or policy of § 1404(a) to justify its use by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue." *Van Dusen v. Barrack*, 376 U.S. 612, 633-34 (1964); *see also Shutte*, 431 F.2d at 25 (reasoning that "unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail." (emphasis in *Shutte*; internal quotation omitted)).

---

[9] For a concise summary of the relevant law affecting abbreviated new drug applications and the "artificial" act of infringement involved in filing some ANDAs, see *Warner-Lambert*, 316 F.3d at 1356-59.

5

The Third Circuit[10] has enumerated several public and private factors for district courts to consider when determining whether to grant a motion for a transfer of venue. *Jumara*, 55 F.3d at 879. The private interests include: (1) plaintiff's choice of forum; (2) defendant's choice of forum; (3) where the claim arose; (4) "the convenience of the parties as indicated by their relative physical and financial condition"; (5) "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora"; and (6) "the location of the books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* The public interests include: (1) "the enforceability of the judgment"; (2) "practical considerations that could make the trial easy, expeditious, or inexpensive"; (3) "the relative administrative difficulty in the two fora resulting from court congestion"; (4) "the local interest in deciding local controversies at home"; (5) "the public policies of the fora"; and (6) judicial familiarity "with the applicable state law in diversity cases." *Id.* at 879-80. While examining these factors, courts must be mindful that the plaintiff's choice of forum deserves great weight. *Id.*

The court must first consider whether venue is proper in the District of Delaware, where defendants seek to have this case transferred—that is, whether the action "might have been

---

[10] Although this case falls under the appellate jurisdiction of the Federal Circuit, 28 U.S.C. § 1295(a)(1), the court applies Third Circuit precedent to defendants' motion to transfer venue because the motion does not address a substantive issue of patent law. *In re: TS Tech USA Corp.*, 551 F.3d 1315, 1318-19 (Fed. Cir. 2008). In *TS Tech*, petitioners sought a writ of mandamus from the Federal Circuit directing the district court for the Eastern District of Texas to transfer a case to the Southern District of Ohio under § 1404(a). When reviewing the Texas court's denial of venue transfer, the Federal Circuit looked to Fifth Circuit precedent on venue, explaining "[b]ecause this petition does not involve substantive issues of patent law, this court applies the laws of the regional circuit in which the district court sits." *Id.*; *see also In re: Genentech, Inc.*, 566 F.3d 1338, 1341-42 (Fed. Cir. 2009) (another transfer of venue mandamus case in which the Federal Circuit applied regional circuit law).

brought" in the District of Delaware.  Pursuant to 28 U.S.C. § 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  Crestor products with formulations allegedly infringing the '502 Patent are sold nationwide, and AZLP is a Delaware corporation with its principal place of business in Delaware.  Undisputedly, the District of Delaware is a proper venue for this action as to AZLP.

As to IPR, however, the record does not include sufficient information from which the court could conclude whether venue would be proper in the District of Delaware.  Section 1400(b) provides two tests under which, if either is satisfied, venue is proper in patent infringement cases.  Under those tests, venue is proper (1) "in the judicial district where the defendant resides" or (2) "where the defendant has committed acts of infringement *and* has a regular and established place of business." (emphasis added).  IPR has failed to show Delaware would be a proper venue under either § 1400(b) test.  First, the record does not establish that IPR passes the § 1400(b) residency test.  Regarding the residency of corporations, 28 U.S.C. § 1391(c) states, in relevant part:

> For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

In arguing for transfer to the District of Delaware, defendants made no attempt to establish that IPR is subject to personal jurisdiction in Delaware.[11]  Thus, the court cannot determine whether

---

[11] The court notes, without deciding, that any agreements IPR may have with AZLP—which have not been submitted to the court and of which defendants have submitted only the most minimal of information—regarding the manufacture of Crestor may supply sufficient contacts with Delaware such that IPR may be subject to personal jurisdiction in Delaware.

venue would be proper in Delaware under the first § 1400(b) test.[12]  For the reasons discussed below, however, even assuming IPR could be held to "reside" in Delaware, the court would still deny defendants' motion.

Second, the court cannot conclude that venue would be proper in Delaware under the second test of § 1400(b) because the record contains no information from which the court could determine that IPR "has a regular and established place of business" in Delaware.  Thus, IPR has failed to show that it satisfies the second half of the second § 1400(b) test.  *See* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3823 pp. 223-24 (2d ed. 1986) (stating the infringement and place of business prongs of the second § 1400(b) test "are stated in the conjunctive and both must be satisfied" and collecting supporting cases.)  Thus, as to IPR, the court cannot determine whether venue would be proper in the District of Delaware, and the court must deny transfer of venue, as to IPR, on that basis.[13]  Moreover, even assuming that IPR does have a "regular and established place of business" in Delaware (which is not established in the record), the court would still deny defendants' motion.  As discussed below, upon consideration of the *Jumara* factors, the court will deny the motion to transfer venue because, as to both defendants, the factors do not weigh in favor of transfer.

   **1.**    **Plaintiff's choice of forum**

---

[12] *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990) (holding "the first test for venue under § 1400(b) with respect to a defendant that is a corporation, in light of the 1988 amendment to § 1391(c), is whether the defendant was subject to personal jurisdiction in the district of suit at the time the action was commenced").

[13] In answering plaintiff's complaint, IPR admitted that the Eastern District of Pennsylvania is a proper venue.  (Answer of IPR ¶ 3.)  IPR further implicitly confirmed this admission by joining in a motion under § 1404(a) rather than filing a motion under 28 U.S.C. § 1406.

8

Plaintiff chose the Eastern District of Pennsylvania for this action. Defendants argue that plaintiff's preference is entitled to little or no deference because Teva is a foreign corporation without a particularized business presence in this district. (Defs.' Venue Mem. at 17-18.) Teva counters by explaining that its American subsidiary, Teva USA, "and its in-house lawyers are located" in this district.[14] (Pl.'s Venue Resp. at 3.) Although Teva USA is not a party to this action, the court finds it thoroughly understandable that Teva should prefer to litigate this case in the district of its American subsidiary. While plaintiff's choice of forum is, perhaps, not as persuasive a factor as it would be if plaintiff were more closely connected to this district, the court will not wholly disregard Teva's preference, which weighs against transfer.

### 2. Defendants' choice of forum

As evidenced by their motion, defendants prefer the District of Delaware. As a Delaware corporation with its principal place of business in Delaware, AZLP has strong connections to the District of Delaware. Both defendants emphasize AZLP's presence in Delaware and, as discussed below, the resulting presence of relevant witnesses and documents in Delaware. Moreover, defendants argue that Delaware is more closely related to the alleged infringement because, while Crestor is sold nationwide, AZLP "directs the marketing and sales" of Crestor from Delaware. (Defs.'s Mem. at 18.) Accordingly, this factor weighs in favor of transfer.

### 3. Where the claim arose

As mentioned above, AZLP sells Crestor throughout the United States. Therefore, if Crestor's formulation does infringe upon the '502 Patent, such infringement occurs nationwide, and plaintiff's claim can be said to have arisen both in this district as well as in the District of

---

[14] It is unclear whether the referenced in-house lawyers work for Teva or Teva USA.

9

Delaware. Considering the national (and, indeed, international) nature of pharmaceutical sales, AZLP's corporate presence in Delaware cannot override the fact that Teva's claim arose in this district (and, likely, every other district in the United States). This recognition is consistent with Congress's pronouncement in § 1400(b), discussed above. Thus, this factor is neutral.

### 4. The convenience of the parties as indicated by their relative physical and financial condition

Both sides of this litigation feature large corporations that conduct business on a global scale. The court finds that, considering the relative physical and financial conditions of the parties, the Eastern District of Pennsylvania is not appreciably less convenient to the parties than the District of Delaware. Moreover, the court notes the close geographical proximity of these two districts.[15] It is unlikely that the Eastern District of Pennsylvania would be significantly less convenient to *any* litigant for whom the District of Delaware is convenient, let alone large corporate litigants. Accordingly, this factor is neutral.

### 5. The convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora

Defendants have failed to identify a single witness who would be available in the District of Delaware but is unavailable in the Eastern District of Pennsylvania, nor do defendants contend that such a witness exists.[16] Party witnesses are presumed to be willing to testify in either forum.

---

[15] Plaintiff represents that the two courthouses are thirty-two miles apart. (Pl.'s Venue Resp. at 5.)

[16] Curiously, defendants argue that many potential witnesses "who are knowledgeable about the Crestor product formulation also reside in or close to Delaware." (Defs.' Venue Mem. at 17.) While this argument goes to the general convenience of witnesses, it cannot bear on the outcome of defendants' venue motion because it ignores that witness convenience is relevant *only to the extent that the witnesses may actually be unavailable for trial in one of the fora*. Defendants do not contend that any witnesses would be available in Delaware but unavailable in

Accordingly, unavailability is an issue only as to non-party witnesses. Defendants have pointed to no non-party witnesses who would be unavailable for trial in this district. Moreover, defendants' key non-party inventor witness resides in Newark, Delaware, which is well within this court's 100 mile subpoena power. Therefore, this factor is neutral.

6. **The location of the books and records (similarly limited to the extent that the files could not be produced in the alternative forum)**

Given AZLP's corporate presence in Delaware, many books and records germane to this suit are, doubtless, located in Delaware. Defendants represent as much to the court. (Defs.' Venue Mem. at 16-17.) However, defendants do not contend that any books or records could not easily be produced in this district. Therefore, this factor is neutral.

7. **The enforceability of the judgment**

Undisputedly and undoubtably, a judgment of this court is equally as enforceable as a judgment of a court sitting in the District of Delaware. This factor is, therefore, neutral.

8. **Practical considerations that could make the trial easy, expeditious, or inexpensive**

All of the factors, other than the parties' choices of forum, discussed thus far have been neutral, and defendants have not contended otherwise. Defendants' argument for transfer focuses, primarily, on the second of the *Jumara* public factors—practical considerations that could make the trial easy, expeditious, or inexpensive. Defendants assert that transferring this case to the District of Delaware would conserve judicial resources because, as compared to the ANDA action, the instant suit "involves related scientific issues." (Defs.' Venue Mem. at 15.)

---

this district. Moreover, as plaintiff points out, (Pl.'s Venue Resp. at 15), individuals who reside "close to Delaware" likely reside close to (or even within) this judicial district.

Defendants further argue that the Delaware ANDA court "has been educated about the underlying technology by the parties" and is, therefore, already familiar with the substantive and technical issues surrounding Crestor. (*Id.*)

Defendants do not contend that, should this case be transferred to the District of Delaware, it could be consolidated with the ANDA action. Even if ineligible for consolidation, however, courts may handle certain cases as related to each other.[17] At first blush, these two cases may appear related, as that term is used in common parlance. However, based on the information submitted by the parties, the court concludes that the two suits present distinct scientific issues and separate questions of law and fact. The court suspects that, were two other cases with a similar degree of circumstantial overlap to arise in a context less esoteric than pharmaceutical patents and organic chemistry, impartial observers would be unlikely to consider them related.

The '502 Patent, a drug formulation patent owned by Teva, is at issue in this case. A drug formulation comprises essentially the mixture (or recipe) of active and inactive ingredients in a particular drug product. In contrast, the ANDA action centers on the '314 Patent, which covers the active pharmaceutical ingredient (API) in Crestor, rosuvastatin calcium. An API differs from excipients (inert substances that form a vehicle for a drug), which are added to a formulation for purposes such as stabilization, adding bulk, adding disintegrating capabilities, promoting ease of manufacturing, and the like. A drug formulation is a combination of one or more APIs and excipients. Whereas the present action concerns defendants' alleged

---

[17] In footnote 7 of their memorandum in support of their motion, defendants allege that, should the court grant their motion, after the action is transferred to Delaware it "will be marked as related" to the ANDA action. Defendants cite no authority or argument for this conclusion.

infringement of the '502 Patent based on the formulation of Crestor, the ANDA action is to resolve whether Teva USA and seven other generic manufacturers artificially infringed the '314 Patent by filing for regulatory approval to manufacture and market generic versions of Crestor.

As plaintiff asserts, and as appears to be the case based on the information before the court, "[t]he only real commonality between the two cases is that they involve pharmaceutical products with the same active ingredient, rosuvastatin calcium," and "the issues raised by the asserted patent claims" differ. (Pl.'s Venue Resp. at 8.) Plaintiff correctly points out that different patents are at issue in the two cases. *Id.* Moreover, those patents deal with differing areas of technology: "The Delaware ANDA case presumably will focus on organic and/or medicinal chemistry, and in particular, statins, while this case will focus on polymer chemistry and pharmaceutical formulations." *Id.* at 9. Consequently, the claim construction, prior art, and invalidity arguments relevant to each of the cases will differ.[18]

The two suits are not related under the Eastern District of Pennsylvania's Local Rule 40.1(b)(3)(A). Although the District of Delaware appears to have a somewhat more inclusive rule for the relation of cases,[19] the court is not convinced that the instant suit and the ANDA

---

[18] Also, this case and the ANDA case feature different statutory bases: the present case alleges actual infringement under 35 U.S.C. § 271(a) whereas the ANDA case alleges the § 271(e) artificial infringement cause of action described above. (Defs.' Venue Mem. at 9-10.) As such, the elements of infringement differ between the two cases, as do the available remedies. *Compare* 35 U.S.C. § 271(a) *with* § 271(e); *see also Warner-Lambert*, 316 F.3d at 1356-59.

[19] Under the District of Delaware's Local Rule 3.1(b):
Civil actions are related if they:
(1) Arise from the same or substantially identical transactions, happenings, or events as the case at bar;
(2) Involve the same or substantially the same parties or property;
(3) Involve the same patent or the same trademark; or
(4) For other reasons would entail substantial duplication of labor if heard by

action would be deemed related under that standard either.

Based on the information currently before it, the court can only conclude that the respective scopes of the '502 and '314 Patents—as well as the legal issues involved in this case and the ANDA action—are patently distinct.[20]  This case involves stabilization, not Crestor's active compound.  The ANDA action involves Crestor's active compound, not stabilization issues.  A familiarity with the technology involved in the ANDA action regarding the active compound (rosuvastatin calcium) will not educate the court about the very different technology at

---

different judges.
The present suit arises from alleged infringement of a different patent, directed at a different aspect of Crestor, than does the ANDA action, so the cases are not related under 3.1(b)(3). Moreover, the two actions arise out of wholly distinct theories of infringement—actual infringement as opposed to artificial infringement through the filing of an ANDA—so the cases are not related under 3.1(b)(1).  Of the three parties to the present suit and the seventeen parties to the consolidated ANDA action, there are only two common parties between the two suits (AZLP and IPR), so the court doubts the cases could be considered related under 3.1(b)(2). Even excluding the other consolidated ANDA defendants, the suits still do not appear related under 3.1(b)(2).  Teva is *not* a party to the ANDA action.  *Teva USA* is a defendant to the ANDA action, but, as defendants emphasize, Teva USA is *not* a party to the instant suit.  Finally, the cases are unlikely related under 3.1(b)(4) because, although the two cases will involve some overlapping discovery, they involve highly distinct scientific issues as described in the body of this memorandum.

[20] Defendants aim much of their argument for transfer at Teva's discovery requests, which they contend are "repetitive and overreaching" and "irrelevant to this case and strikingly similar to discovery requested in the Delaware ANDA action."  (*Id.* (emphasis omitted).)  The parties have not brought a discovery dispute before the court, so the court cannot address this argument other than to observe that it is not surprising that discovery in this case should feature significant overlap with the ANDA action.  Both cases involve Crestor, though in different respects.  Indeed, it is the differing ways through which the two suits implicate Crestor products that reveal the distinction between this suit and the ANDA action.  That some discovery may overlap does not alter that this case involves a different patent—covering certain stabilized formulations as opposed to the actual active ingredient—and different issues than does the ANDA action.  The fact that both suits involve Crestor does not, alone, justify transfer.  Moreover, plaintiff agrees to simply adopt discovery rulings made in the Delaware action pertaining to issues that arise in this case.

issue here (the stabilization of pharmaceutical formulations containing statins). Moreover, there is no assurance that, if this action were transferred to Delaware, it would be assigned to the same judge as the ANDA action.[21] Therefore, to whatever extent this case and the ANDA action involve overlapping scientific issues, defendants' argument concerning the familiarity and education of the ANDA action judge regarding technical issues is of little force. Thus, despite defendants' contentions, this factor does not weigh in favor of transfer. Rather, it counsels against transfer.

### 9. The relative administrative difficulty in the two fora resulting from court congestion

Plaintiff argues that the District of Delaware's docket is presently strained due to a vacant judgeship. (Pl.'s Venue Resp. at 21.) In support of that contention, plaintiff points to orders from the Chief Judge of the Third Circuit temporarily designating and assigning six judges from this district and six from the District of New Jersey to hold court in the District of Delaware. (Pl.'s Venue Resp. Exs. G, I.) Moreover, in rebutting another of defendants' arguments, plaintiff rightly recognizes that, pursuant to those Third Circuit orders, another case to which Teva is a party in the District of Delaware is actually before the Chief Judge of this district. (Pl.'s Surreply at 2; *see* Pl.'s Venue Resp. Ex. H.) Defendants fail to rebut plaintiff's argument on this factor, which weighs heavily against transfer.

### 10. The local interest in deciding local controversies at home

This factor is neutral because this case simply cannot be considered a "local" controversy.

---

[21] Indeed, were this case transferred to Delaware, it might even be assigned to one of the judges from this district or the District of New Jersey that have been temporarily assigned to hold court in Delaware, as discussed below.

Rather, it is a dispute of national scope with questions of federal law. Defendants argue that Delaware has a greater interest in this case than Pennsylvania because AZLP is a Delaware corporation whereas plaintiff is not a Pennsylvania corporation. (Defs.' Venue Mem. at 18-19.) The court finds little or no merit to this argument in the context of this case. As a patent dispute, this case does not implicate internal corporate governance matters or local issues peculiar to Delaware. Instead, this case involves a patent, granted by the federal government, that applies equally throughout the United States. The court fails to see how a patent holder's state of incorporation necessarily has a greater interest in a patent suit than does another state in which the patented product is also commonly found. While it is true that AZLP is a corporate citizen of Delaware, AZLP has a corporate presence in this district, and Crestor is sold nationwide.

      **11.**    **The public policies of the fora**

Defendants have failed to enunciate a single policy difference between the two fora relevant to patent law, and, as federal law governs patents, it is likely that no such policy differences exist. Therefore, this factor is neutral.

      **12.**    **Judicial familiarity with the applicable state law in diversity cases.**

As the present suit is not a diversity case, this factor has no relevance.

**III.**    **Conclusion**

In summary, the factors do not weigh in favor of transfer. Plaintiff's choice of forum outweighs that of defendants, and the District of Delaware may not even be a proper venue for IPR. The legal issues in this case are clearly distinct from those in the ANDA action, which weighs against transfer. The congestion in the District of Delaware's docket very strongly weighs against transfer. The other *Jumara* factors are neutral. Thus, even if the court were to

afford little deference to plaintiff's choice of forum, as defendants urge, transfer of venue would still be inappropriate. Especially since the court does grant weight to plaintiff's preference, defendants have clearly failed to meet their burden of proving that the balance of the factors favors transfer. Accordingly, the court will deny defendants' motion to transfer venue.